ORIGINAL

NORTHERN DISTRICT OF TEXAS

JAN 2 8 2014

CLERK, U.S.            OF COURT
By _____
        Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| DENNIS ASHER,<br>    PLAINTIFF, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:12-CV-831-A |
| CAROLYN W. COLVIN, ACTING<br>COMMISSIONER OF SOCIAL SECURITY,<br>    DEFENDANT. | § § § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Dennis Asher ("Asher") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability and disability insurance benefits under Title II and for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In March 2007, Asher protectively filed his applications, alleging that his disability began on May 10, 2006. (Tr. 16.) His applications for benefits were denied initially and on reconsideration. (Tr. 16, 50-53) The ALJ held a hearing on October 2,

2008 and issued a decision on November 21, 2008, finding that Asher was not disabled or entitled to social security disability benefits because Asher had the ability to perform his past relevant work as a route supervisor, as that work is customarily performed in the national economy. (Tr. 16-26, 540-80.) In addition, the ALJ determined that there were jobs available in significant numbers in the national economy that Asher could also perform. (Tr. 24-25.) The Appeals Council, on May 12, 2009 denied Asher's request for review. (Tr. 27-30.) Subsequently, the Appeals Council set aside its May 12, 2009 decision to consider additional evidence. (Tr. 9-10; *see* Tr. 4-8.) Thereafter, on September 17, 2012, the Appeals Council again denied Asher's request for review after considering additional information, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 4-8.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir.

1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,*

837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

### III. ISSUES

In his brief, Asher presents the following issues:

1. Whether the ALJ's finding at Step One regarding his ability to engage in substantial gainful activity is inconsistent with his findings at Steps Four and Five;

2. Whether the ALJ erred in failing to give the medical opinion evidence the proper weight; and

3. Whether the ALJ's residual functional capacity ("RFC") assessment is supported by substantial evidence.

(Plaintiff's Brief ("Pl.'s Br.") at 2, 19-32.)

### IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his November 21, 2008 decision, the ALJ found that Asher met the disability insured status requirements of the SSA as of May 10, 2006, his alleged onset date of disability, through September 30, 2008. (Tr. 17.) The ALJ next held that Asher had "not engaged in substantial gainful activity at any time relevant to this decision." (Tr. 17.) The ALJ further found that Asher had the severe impairments of "degenerative changes in his cervical and thoracic spine, as

4

well as degenerative changes in his lumbosacral spine status post left L5-S1 fusion." (Tr. 17.)

Next, the ALJ held that none of Asher's impairments or combination of impairments met or

equaled the severity of any impairment in the Listing. (Tr. 17-18.)

> As to Asher's RFC, the ALJ stated:

> The claimant retains the ability to obtain, perform, and maintain the following [RFC]: lift and carry twenty pounds occasionally and ten pounds frequently, and stand and walk six hours and sit six hours in an eight-hour workday. He can push and pull twenty pounds occasionally with his upper extremities. He cannot climb ladders, ropes, and scaffolds. He can frequently climb ramps[,] stairs, kneel, crouch, crawl, and stoop. He can occasionally balance. He cannot reach overhead or engage in repetitive head motion from side to side. He can frequently perform other reaching with the bilateral upper extremities, and he can constantly handle, finger, and feel with the bilateral upper extremities. He has no visual or communicative limitations. He must avoid hazardous moving machinery and working at unprotected heights. . . .

(Tr. 23.) At Step Four, the ALJ opined, based on his RFC assessment and the testimony of the

vocational expert ("VE"), that Asher could perform his past relevant work as a route supervisor

as that work is customarily performed in the national economy. (Tr. 23-24.) In addition, the

ALJ found that even if Asher could meet his burden of proof at Step Four, there were still jobs

that existed in significant numbers in the national economy that Asher could perform. (Tr. 24-

25.) Thus, the ALJ found that Asher was not disabled. (Tr. 25.)

## V. DISCUSSION

### A. **Substantial Gainful Activity**

In his brief, Asher argues that the ALJ's decision must be remanded because the ALJ's

finding at Step One of the sequential disability evaluation did not allow for the occupations

found performable at Steps Four and Five. (Pl.'s Br. at 19-20.) Asher claims that at Step One

the ALJ found that "claimant has not engaged in substantial gainful activity at any time relevant to this decision" and such finding is, in essence, not consistent with the ALJ's later findings that he could perform his past relevant work or other jobs available in significant numbers in the national economy. (Pl.'s Br. at 19; Plaintiff's Reply Brief ("Pl.'s Reply") at 3; *see* Tr. 17.)

Asher's argument is not persuasive. In this case, as stated above, the ALJ found at Step One that Asher had not engaged in substantial gainful activity at any time relevant to this decision. Contrary to Asher's argument, this was not a decision that Asher had never engaged in any substantial gainful activity.[1]  Instead, it was a decision that Asher was not working during any period in which Asher believed that he was disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571 *et seq.*, 416.920(a)(4)(i), 416.971 *et seq.*; *Johnston v. Colvin*, No. 6:12-CV-02669, 2013 WL 6667320, at *4 (W.D. La. Dec. 17, 2013) ("At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings."); *Williams v. Soc. Sec. Admin.*, No. 12-1259, 2013 WL 4548599, at *8 (E.D. La. Aug. 27, 2013) ("First, the claimant must not be presently working at any substantial gainful activity.") (quoting *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001)).  If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b). On the other hand, at Step Four, the ALJ has to determine whether the claimant is capable of performing his past relevant work. 20 C.F.R. §§ 404.1420(a)(4)(iv), 416.920(a)(4)(iv); *see Shave*, 238 F.3d at 594-95. "Past relevant work is defined as work that the claimant has done in the past 15 years that was substantial gainful

---

[1] "Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *see* 20 C.F.R. §§ 404.1572, 416.972.

activity, of such duration that the claimant has learned how to perform the job." *Copeland v. Colvin*, No. 1:12-CV-142-C, 2013 WL 3779734, at *4 (N.D. Tex. July 19, 2013); *see* 20 C.F.R. §§ 404.1560(b)(1), 404.1565, 416.960(b)(1), 416.965. In this case, the ALJ found that Asher was capable of performing his past relevant work as a route supervisor and that he had transferable skills from his past relevant work to perform other jobs that existed in significant numbers in the national economy. (Tr. 23-25.) Such finding is not inconsistent with the ALJ's finding at Step One as they involve completely separate inquiries. While both findings consider whether certain work constituted "substantial gainful activity," the findings are focused on different time periods. Because there was no error, remand is not required.

### B. Medical Opinion Evidence

Asher also argues that the ALJ erred in not mentioning the "examination and accompanied medical source statement completed by Dr. [Ken] Brassie," Asher's chiropractor. (Pl.'s Br. at 20; *see* Pl.'s Br. at 20-24; Pl.'s Reply at 3-4.) Asher acknowledges that Dr. Brassie, as a chiropractor, is not an "acceptable medical source" but claims that his opinion should still have been evaluated as evidence from an "other source." (Pl.'s Br. at 20-21.) Citing to 20 C.F.R. § 416.913(d) and Social Security Ruling 06-03p, Asher argues that "Dr. Brassie's exam is clearly the most comprehensive physical exam in the record, was based on the majority of the medical evidence in the record, and was remote enough from Asher's lumbar fusion surgery to assume maximum medical improvement had occurred." (Pl.'s Br. at 24.) Asher claims that, consequently, "the Ruling and Regulations clearly allow for a chiropractor to provide medical

opinions in a medical source statement and therefore the failure of the ALJ to mention or give substantial weight to Dr. Brassie's medical source statement was plain error." (Pl.'s Br. at 24.)

As stated above, the ALJ ultimately determined that Asher was not disabled. (Tr. 23-25.) In making such a determination, the ALJ considered, *inter alia*, the following evidence in the record:

(1) a Physical Residual Functional Capacity Assessment ("PRFCA") dated June 29, 2007 in which State Agency Medical Consultant ("SAMC") Frederick Cremona, M.D., opined that Asher: (a) could lift and/or carry (including upward pulling) twenty pounds occasionally and ten pounds frequently, (b) could sit, stand and/or walk about six hours in an eight-hour workday, (c) had the unlimited ability to push and/or pull, (d) could occasionally climb ladders, ropes, and scaffolds, stoop, crouch, and crawl, and (e) could frequently climb ramps and stairs, balance, and kneel (Tr. 161-68; *see* Tr. 18);

(2) a PRFCA dated October 16, 2007 in which SAMC Bonnie Blacklock, M.D., opined that Asher: (a) could lift and/or carry (including upward pulling) twenty pounds occasionally and ten pounds frequently, (b) could sit, stand, and/or walk about six hours in an eight-hour workday, (c) had the unlimited ability to push and/or pull, (d) could never climb ladders, ropes, and scaffolds, and (e) could occasionally climb ramps and stairs and balance, stoop, kneel, crouch, and crawl (Tr. 169-76; *see* Tr. 18);

(3) evidence that in early May 2006 Asher fell approximately thirty feet from a ladder (Tr. 18; *see* Tr. 126-28, 140, 142, 145-46);

(4) examination and diagnostic records dated in June 2006 showing Asher had "mild degenerative changes in the thoracic and cervical spine and only Grade I spondylolisthesis at L5-S1," was diagnosed with myofascial pain, low back pain, and cervical strain, and was treated conservatively (Tr. 18; *see* Tr. 148);

(5) examination records dated in May 2007 in which Asher complained to Steve Bishop, D.O. ("Dr. Bishop") of severe back pain, muscle spasms, and tingling in his toes (Tr. 18; *see* Tr. 186);

(6) examination records in July 2007 in which Dr. Bishop noted Asher had an abnormal gait and weakness in the left upper extremity (Tr. 18; *see* Tr. 180);

(7) an MRI of the lumbar spine dated in July 2007 that "showed bilateral spondylolysis at

L-5, Grade I spondylolisthesis at L5-S1, [] degenerative disc disease at L1-2, L4-5, and L5-S1," "right-sided disc protrusion that indented the thecal sac at L1-2," no stenosis at "that level or at the L4-5 level," and elongated neural foramina at L5-S1 (Tr. 18; *see* Tr. 187-88);

(8) a letter dated August 2007 in which Dr. Bishop and Shellie Shepherd, Dr. Bishop's physician's assistant ("PA Shepherd") recommended that Asher get a neurosurgical consultation and opined that Asher had increased back pain, difficulty walking, tingling down his legs to his toes, paraspinal muscle spasms, loss of lumbar range of motion, gait difficulty, left lower extremity weakness and loss of sensation, an absent left Achilles reflex, and would have difficulty maintaining meaningful employment (Tr. 18; *see* Tr. 179);

(9) an October 2007 examination in which neurosurgeon Erika Petersen, M.D. ("Dr. Petersen"), reported that Asher complained of a burning sensation and numbness in his right lower extremity and weakness in his left upper extremity and noted that Asher had weakness in rotation to the left secondary to pain, had intact sensation in his left upper extremity but some loss of strength at 4/5, ambulated with mildly bent knees and with his body off in an angle, had diminished left lower extremity strength, intact sensation, symmetrical reflexes[2] (Tr. 18; *see* Tr. 201-03);

(10) a brain MRI dated in January 2008 showing "claimant's brain was negative" and a cervical spine MRI also dated in January 2008 showing "small bulges at several levels with mild neural foraminal stenosis on the left at C3-4 and C4-5" and no spinal cord compression (Tr. 19; *see* Tr. 211-13);

(11) diagnostic studies of the lumbar spine performed in October 2007 that showed "loss of lordosis, as well as Grade I to II spondylolisthesis and degenerative disc disease at L5-S1" (Tr. 19; *see* Tr. 197);

(12) examination notes dated in December 2007 showing that Asher, *inter alia*, had: (a) loss of lumbar flexion and cervical lateral rotation and sat with his head tilted to the right, (b) full range of motion in all extremities, (c) a diffuse loss of sensation, (d) loss of reflexes, (e) 4/5 strength in his left upper extremity, (f) a positive Spurling's test on the left, which was an indication of cervical radiculopathy, (g) an antalgic gait, and (h) difficulty walking on his left toes (Tr. 19; *see* Tr. 192-94);

---

[2] In addition, Dr. Petersen noted that "the MRI showed a mild stenosis at L5 and recommended continued conservative treatment." (Tr. 18; *see* Tr. 202). Dr. Petersen also "recommended MRI's of the cervical spine and brain to rule out other etiologies for the claimant's left upper extremity weakness and head tilt." (Tr. 18; *see* Tr. 202-03.)

(13) evidence that Asher, who had developed (a) severe claudication, (b) an inability to extend his left extensor halluces longus, and (c) a left foot drop, had a left L5-S1 fusion in January 2008, which revealed a severely collapsed L5-S1 disc space (Tr. 19; *see* Tr. 236, 258-61);

(14) examination notes dated February 2008 showing that Asher had weakness in left ankle and left lower extremity and a CT scan of lumbar spine "revealed possible impingement on the left L2 nerve due to a disc bulge at L2-3, as well as some stenosis at L5-S1" (Tr. 19; *see* Tr. 208-09, 245);

(15) examination notes and diagnostic studies dated March 2008 and May 2008 showing that: (a) Asher's symptoms were controlled with medication, (b) Asher was able to flex his left big toe and left foot and had fluid gait, and (c) Asher had "mild anterolisthesis of L5 on S1 but stable hardware" (Tr. 19; *see* Tr. 268, 270, 281-82);

(16) a July 2008 medical source statement in which James Baither, a physician's assistant ("P.A. Baither"), indicated that Asher had pain and weakness in the left lower extremity, weakness in left dorsiflexion at the ankle, an absent left ankle jerk, and moderate to severe pain and recommended that Asher not return to construction-type work (Tr. 19; *see* Tr. 274-75);

(17) examination notes dated in July 2008 showing that Asher had some neural foraminal stenosis and root compromise on the left at C3-4 and C4-5, could not heel walk on the left, had diminished strength at 4/5 on his left extremities, had a foot drop and diminished reflexes in the left lower extremity (Tr. 20; *see* Tr. 283-85, 440); and

(18) Asher's testimony before the ALJ (Tr. 20-21).

In reaching his decision, the ALJ stated:

I also generally concur with the prior [SAMC] determinations, insofar as they limited the claimant to light work with postural restrictions. However, I have identified additional restrictions, given the updated medical evidence and the claimant's allegations. Therefore, I have not afforded great weight to the prior determinations in all respects. . . .

. . . .

. . . . In this case, neither the objective medical evidence, the allegations of the claimant, nor the other non-medical evidence establishes the claimant is so limited as to be found disabled. I note the intensity and persistence of his pain are not consistent with the medical record and signs or with the medical record as a

10

whole. I also note that although the claimant testified his pain level was a nine at the hearing, he did not exhibit any manifestations of pain.

At the time of his injury, the claimant had no neurological deficits. Consistent with his examination, he had only mild degenerative changes in his spine on diagnostic studies. One year later, the only neurological deficit noted by Dr. Bishop was an absent left Achilles reflex. At the next examination, Dr. Bishop noted weakness in the left lower extremity. The disc protrusion at L1-2 as seen on the July 2007 MRI was to the right; thus it could not account for the claimant's left lower extremity symptoms. The neural foramina at L5-S1 were identified as elongated, but the radiologist did not affirmatively indicate the presence of nerve root impingement that could account for the claimant's symptoms.

In Dr. Bishop's letter of August 2007, he noted subjective symptoms down both legs but neurological deficits only in the left lower extremity. However, several months later the claimant complained only of symptoms in his right lower extremity when he presented to the veterans' hospital. When examined, there were no sensory deficits or reflex abnormalities in the left lower extremity, and the MRI showed only mild stenosis. Thus, the neurosurgeon recommended only conservative treatment. He changed his opinion as to surgery only when the claimant's neurological deficits worsened in early 2008. However, the claimant had only minimally invasive surgery in February 2008, per his neurosurgeon's notation. His hardware has remained in good position post-operatively. His neurological function improved post-operatively, and he had a fluid gait as of March 2008.

Although the neurological deficits in his left lower extremity recurred, and although he has neurological deficits in his left, or non-dominant, upper extremity, those deficits are not so significant as to warrant a finding the claimant is disabled. The claimant's allegations as to his significant functional limitations are not fully supported by the objective medical evidence and the findings on diagnostic studies. While the objective evidence establishes the claimant is limited, it does not establish he is disabled.

However, I have given the claimant the benefit of every doubt as to his impairments and his symptoms in limiting him to twenty pounds occasionally but only ten pounds frequently. I find he can stand and walk six hours and sit six hours in an eight-hour workday. I have limited him in postural and reaching activities due to his symptoms, and I have afforded him the benefit of all doubt in assessing some environmental restrictions. I note that no physician has found evidence of atrophy, despite the claimant's allegations of significant loss of use of

11

his left extremities. He testified he can fish, drive six miles into town, dress and bathe himself, cook outdoors, and fold laundry, despite other testimony that he has no reliable use of his left arm. I note the claimant was walking one to two miles per day as of January 2008. He has inquired into vocational training for a job that does not involve heavy lifting. The record indicates that he did not pursue vocational training due to a pending personal injury claim.

. . . .

In reaching my conclusions, I have considered the assessments of the claimant's treating physicians' assistants and Dr. Bishop. I note Mr. Baither recommended only that the claimant not return to construction work. Dr. Bishop and his assistant opined the claimant would have much difficulty maintaining meaningful employment. However, Dr. Bishop has provided nothing more than a legal conclusion. As such, it does not require the analysis of opinion evidence. I have afforded it little consideration. While my ultimate conclusion is consistent with Mr. Baither's statement, I have afforded little consideration to that statement in reaching my conclusion, as Mr. Baither's statement also is conclusory only. . . .

(Tr. 18, 21-22 (internal citations omitted).)

In this case, Asher complains that that the ALJ erred in not mentioning the examination

and medical source statement completed by Dr. Brassie, Asher's chiropractor. (Pl.'s Br. at 20;

*see* Pl.'s Br. at 20-24.) Dr. Brassie reviewed Asher's Veteran Affairs hospital medical records

and examined Asher on December 17, 2008. (Tr. 449.) In the "Discussion" section of his

medical source statement, Dr. Brassie stated:

The prognosis for Mr. Asher is uncertain at this point. Since Mr. Asher had his surgery the healing process has been slow and there is continued question as to the success of the procedure performed. There is continued extreme atrophy of the muscles on the left side in both the upper and lower extremities and the endurance of the muscles has been compromised. At this point I feel that aggressive rehabilitation to the muscular system should start as soon as possible in order to increase the chances of returning to a more normal life. There is also concern about the continued neurological deficits that are affecting his gait and balance. At this point the patient needs to continually change positions for comfort and any prolonged sitting and standing is not appropriate. I have recommended that the patient not return to any type of physical work until the

proper strength has returned that will allow him to work safely. The patient needs to also be cleared by his surgeon before taking on any form of rehabilitation to that area. I recommend that the patient start rehabilitation on the areas away from the surgical site. Mr. Asher should consider using a cane or other walking assistance until the neurological deficits allow him to regain normal balance to reduce the risk of falling.

(Tr. 452.)

While it is true the ALJ did not discuss Dr. Brassie's medical source statement in his decision, the reason for this is because such medical source statement was not submitted by Asher until **after** the ALJ's decision, which was dated November 21, 2008. (Tr. 448.) On January 12, 2009, Asher's attorney submitted, *inter alia*, the medical source statement to the Appeals Council. (Tr. 448-52.) In its September 17, 2012 Notice of Appeals Council Action, the Appeals Council indicated that it had considered such information but "found no reason under our rules to review the Administrative Law Judge's decision." (Tr. 4, 7.)

Social Security regulations allow claimants to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision to deny benefits. 20 C.F.R. §§ 404.970(b), 404.976(b); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331-32 (N.D. Tex. 2003). The Appeals Council is required to evaluate the entire record, including any new and material evidence submitted by the claimant. *Id.* The Appeals Council's decision to decline to grant review of an ALJ's decision is part of the "final decision" and, as such, is reviewable in federal court. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336-38 (5th Cir. 2005). In the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug. 28,

2009) (citing *Higginbotham*, 405 F.3d at 332 and *Higginbotham v. Barnhart*, 163 F. App'x 279, 281-82 (5th Cir. 2006) ("*Higginbotham II*")). "A court considering the final decision should review the record as a whole, including the new evidence, to determine whether the Commissioner's findings are supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes insufficiently supported." *Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *7 (N.D. Tex. July 31, 2010) (citing *Higginbotham II*, 163 F. App'x at 281-82).

Contrary to Asher's argument, the Appeals Council did not err by failing to specifically discuss in detail its reasons for rejecting the newly submitted opinion of Dr. Brassie. According to the Hearings, Appeals and Law Litigation Manual ("HALLEX"), the Appeals Council was at one time required to specifically address and assess the weight of any additional evidence and legal arguments submitted for review. *See Newton*, 209 F.3d at 459 (citing HALLEX § I-3-5-1 ("In the denial notice, the Appeals Council will specifically address additional evidence or legal arguments or contentions submitted in connection with a request for review.")). However, Fifth Circuit precedent states that the requirement in HALLEX requiring a detailed discussion of additional evidence was suspended by the Executive Director of the Office of Appellate Operations years ago, and there is no indication such suspension has been lifted. *See Higginbotham*, 405 F.3d at 335 n.1; *see also Frazier v. Colvin*, No. 12-1728, 2013 WL 4040061, at *6 (W.D. La. Aug. 7, 2013); *Lee*, 2010 WL 3001904, at *8 (citing *Higginbotham*, 405 F.3d at 335 n.1). *Coleman v. Astrue*, No. 1:08-CV-230-SAA, 2010 WL 956175, at *6 (N.D. Miss. Mar. 11, 2010); *Walker v. Astrue*, No. 3:09-CV-1900-BH, 2010 WL 910505, at *9 (N.D. Tex. Mar.

13, 2001); *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *5 (W.D. La. Aug. 28, 2009). Furthermore, as noted above, in the Fifth Circuit, "evidence submitted by a claimant to the Appeals Council does not per se require remand to the Commissioner simply because the Appeals Council failed to address the evidence in its decision." *McGee*, 2009 WL 2841113, at *6. Instead, the issue before the Court is whether "the new evidence diluted the record to such an extent that the ALJ's determination became insufficiently supported." *Lee*, 2010 WL 3001904, at *8.

In analyzing such issue, the Court notes that Dr. Brassie, as a chiropractor, is not considered an "acceptable medical source," such as a licensed physician, psychologist, optometrist, podiatrist, or qualified speech-language pathologists, who can provide evidence to establish an impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a). Thus, a chiropractor's opinion is not entitled to the same weight as that of a medical doctor and is viewed as an "other medical source." *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) ("And Dr. Peters is a chiropractor; the relevant regulations accord less weight to chiropractors than to medical doctors.").[3] However, an ALJ "may use evidence" from such "other sources" to show the severity of an impairment and how it affects an individual's ability to function. *See* Social Security Ruling ("SSR") 06–03p 2006 WL 2329939 at *2 (S.S.A. Aug. 9, 2006); *Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006)

In this case, even assuming that the newly submitted medical source statement of Dr. Brassie did conflict with some evidence in the record relied on by the ALJ, there is substantial

---

[3] An "other medical source," even one who has treated the claimant on a regular basis, is not entitled to the same deference as an "acceptable medical source." *See Thibodeaux v. Astrue,* 324 F. App'x. 440, 445 (5th Cir. 2009).

15

evidence, as set forth above, to support the ALJ's disability determination.[4] *See Gonzalez v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-02003-O(BF), 2012 WL 1058114, at *10-11 (N.D. Tex. Jan. 26, 2012) ("[A]lthough some of the limitations on Plaintiff's work-related activities [contained in the assessment submitted after the ALJ's decision] indicate a more substantial loss in [the claimant's] ability, this Court finds that those limitations do not dilute the record to such an extent that the ALJ's decision would become insufficiently supported."). The ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, because substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins v. Astrue*, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) and *Steed v. Astrue*, 524 F.3d 872, 874 (8th Cir. 2008)). Consequently, there was no error and remand is not required.

## C. RFC Determination

In his brief, Asher also claims that the ALJ's decision must be remanded because the ALJ's RFC determination is not supported by substantial evidence and contains legal errors. (Pl.'s Br. at 24-32; Pl.'s Reply at 4-7.) Asher argues that "the summary of the medical evidence set out in the decision lacks substantial evidence . . . because the discussion arbitrarily ignores uncontroverted medical evidence that indicates Asher suffers from severe pain tha[t] results in significant functional limitations, while focusing on isolated portions of the evidence that

---

[4] *But see Lee v. Astrue*, No. 3:10-CV-155-BH, 2010 WL 3001904, at *8 (N.D. Tex. July 13, 2010) (finding that although ALJ's decision was initially supported by substantial evidence, the addition of a doctor's assessment to the record made the decision insufficiently supported because it provided a very detailed assessment regarding claimant's inability to work that had not previously existed in the record); *Stewart v. Astrue*, No. 7-07-CV-052-BD, 2008 WL 4290917, at *4 (N.D. Tex. Sept. 18, 2008).

somewhat support the decision." (Pl.'s Br. at 25.) Asher further claims that that the ALJ erred in finding that the evidence does not establish that Asher's functional limitations are disabling because such a conclusion "omits discussion of much of the probative evidence of Asher's functional limitations." (Pl.'s Br. at 26.) Asher argues, in essence, that the ALJ misstates the evidence or ignores evidence in the record. (Pl.'s Br. at 24-32.) In addition, Asher states that "[s]ubstantial evidence supports a finding of a much more restrictive RFC than the assessment found in the decision." (Pl.'s Br. at 30.) Asher argues that "[s]ubstantial evidence indicates that Asher's documented physical impairments and pain would require a sit/stand option of very short intervals; significantly limited standing and walking; limited sitting; occasional to less than occasional postural activities; and occasional to less then [sic] occasional reaching, handling, fingering, lifting, and carrying with his left hand." (Pl.'s Br. at 31.) Finally, Asher states the ALJ violated SSR 96-8p and "case law by omitting any discussion of the two State agency assessments, both of which included occasional postural functioning, even thought [sic] the assessments were based on only a sliver of the medical evidence in the records." (Pl.'s Br. at 31.)

RFC is what an individual can still do despite his limitations.[5]   SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-

---

[5] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[6] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The

---

[6] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 1995) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

The focus of Asher's argument appears to be that the ALJ's RFC determination is not supported by substantial evidence because the ALJ misstated the evidence or ignored certain evidence. (*See, e.g.*, Pl's Br. at 24-30.) However, procedural perfection in administrative proceedings is not required as long as the substantial rights of a party have not been affected. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (stating that ALJ's omission does not require remand unless it affected claimant's substantial rights). As stated above, the ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, when substantial evidence also supports the conclusion that was reached by the ALJ. *See Dollins*, 2009 WL 1542466, at *5.

In this case, although the ALJ's written findings are not perfect, the ALJ ultimately determined, based on substantial evidence in the record, that Asher had the RFC to perform, in essence, light work[7] with additional restrictions and was not disabled because he was, *inter alia*,

---

[7] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

19

able to perform his past relevant work. (Tr. 23-25.) Furthermore, while the ALJ may not have discussed every single medical record in the 580 page transcript, there is no evidence that such failure prejudiced Asher because there is also evidence in the record that supports the ALJ's determination. The ALJ adequately explained the reasoning for his RFC and disability determination and for giving less weight to certain evidence, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *See Muse*, 925 F.2d at 790. Because there is substantial evidence in the record that supports the ALJ's disability determination, the Court concludes that remand is not required.

As to Asher's claims regarding the SAMC opinions, the Court notes that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96–6p, 1996 WL 374180, at *2–4 (S.S.A. July 2, 1996). Pursuant to SSR 96–6p, the ALJ and the Appeals Council are not bound by the state agency

---

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b). The primary difference between sedentary and most light jobs is that light work requires a good deal of walking or standing. Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (S.S.A. 1983). "'Frequent' means occurring from one-third to two-thirds of the time." *Id. at* *6. "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour day." *Id.* "Sitting may occur intermittently during the remaining time." *Id.*



physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96–6p, 1996 WL 374180, at *2.

Contrary to Asher's claims, the ALJ did discuss the two SAMCs' PRFCA assessments. (Tr. 18.)  While the ALJ did not go into detail regarding the SAMCs' PRFCA assessment, the ALJ, referring to Exhibits 4F and 5F which contained the SAMCs' opinions, did indicate that he "generally concur[red] with the prior determinations, insofar as they limited the claimant to light work with postural restrictions." (Tr. 18.)  The ALJ further stated that he did not afford them great weight because he found, based on updated medical evidence and Asher's allegations, that Asher was more restricted than found by the SAMCs.  (Tr. 18.)  Because the ALJ did discuss the SAMCs' opinions and explained the weight given to such opinions, the ALJ did not err and remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made.  *See* 28

U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **February 11, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 28, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

22